The CENTRAL BANK COMPANY,
Petitioner,

v.

COMMISSIONER OF INTERNAL REV-
ENUE, Respondent.

No. 15442.

United States Court of Appeals
Sixth Circuit.

April 4, 1964.

Everett H. Davidson, Lorain, Ohio, and Don S. Harnack, Chicago, Ill., for Pullman Bank & Trust Co. of Chicago, Ill., amicus curiae, Everett H. Davidson, Lorain, Ohio, Don C. Miller, Cleveland, Ohio, on the brief.

John B. Jones, Jr., Washington, D. C., for respondent, Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Harry Baum, Alec A. Pandaleon, Attys., Dept. of Justice, Washington, D. C., on the brief.

Before WEICK, Chief Judge, and PHILLIPS and EDWARDS, Circuit Judges.

PER CURIAM.

Petitioner, Central Bank Company, appeals from a decision of the Tax Court of the United States in The Central Bank Company v. Commissioner, 39 T.C. 856. Widespread interest in banking circles in the outcome of this appeal occasioned the filing of briefs amicus curiae by Pullman Bank and Trust Company of Chicago, Illinois, and the Ohio Bankers Association.

The controversy in this case pertains to what amounts may be charged by a bank in a given year as additions to its reserve for bad debts, and, hence, deducted from its income for purposes of income taxation.

On this point the Internal Revenue Code, section 166(c) gives the Commissioner of Internal Revenue great discretion:

"§ 166. Bad debts

"(c) Reserve for bad debts.—In lieu of any deduction under subsection (a), there shall be allowed (in the discretion of the Secretary or his delegate) a deduction for a reasonable addition to a reserve for bad debts." I.R.C.1954, Title 26, U.S.C. § 166(c).

Presumably to indicate how the Commissioner's discretion would be exercised in relation to the problem related above, on December 8, 1947, George J. Schoeneman, then Commissioner of Internal Revenue, published Mimeograph Bulletin 6209, the first sentence of which reads as follows:

"1. The Bureau has given careful and extended consideration to the situation of banks in general with respect to the use of reserves for bad debts, the proper measure of such reserves, and amounts to be allowed as deductions."

The balance of the bulletin, which is rather lengthy, established a formula for allowing the bank to determine its bad debt reserve on the basis of actual bad debt loss experience over a period of 20 years. It provided a formula for establishing a ceiling on the reserves; provided that the average should be computed on loans comparable in their nature and risk to those outstanding at the close of the taxable year involved; provided that government insured loans should be eliminated from prior year accounts in computing percentages of past losses; and provided that losses not in the nature of bad debts resulting from the ordinary course of business should also be eliminated in computing percentages of prior losses.

Under a regulation subsequently issued (see Rev. Rul. 54–148, 1954–1 Cum. Bull. 60), the Commissioner extended the application of the formula to any period of 20 consecutive years subsequent to 1927 which the taxpayer might choose.

The petitioner, Central Bank, in this instance sought to apply the 6209 formula employing the 20 consecutive years between 1929 and 1948. As a result, petitioner's loss experience for the depression year of 1934 was figured into the average, resulting in Central Bank claiming additions to its bad debt reserve of $35,000, $30,000 and $30,000 for the years 1956, 1957 and 1958, respectively.

On administrative review the Internal Revenue Department disallowed these amounts as proper deductions for "reserves for bad debts," and petitioner, Central Bank, brought suit in the Tax Court seeking a determination of liability.

Before the Tax Court, the Commissioner of Internal Revenue contended first that the existing reserves, prior to the yearly additions referred to above, were sufficient, and that the additions proposed by petitioner for those years were excessive and unnecessary in the judgment and discretion of the Commissioner. In this regard the Commissioner contended that section 166(c) quoted above gives the Commissioner discretion

to determine what is "excessive" or "reasonable" concerning such reserves and that the Commissioner had the right to make such a determination, independent of any consideration of what results would be produced by application of the 6209 formula.

The Commissioner's second contention before the Tax Court was that the taxpayer bank had made errors in computing allowable additions to its "bad debt reserve" in accordance with I.R.S.Mim. 6209 in its handling of its loss experience in the year 1934.

The Tax Court considered and decided this case entirely on the basis of the first of the Commissioner's contentions. The Tax Court opinion said in part:

"[T]he basic and ultimate issue here is the correctness of the respondent's action in disallowing the deductions in issue, viewed in the light of the provisions of section 166 of the Code and not viewed in the light of the provisions of Mim. 6209 and subsequent revenue rulings pertaining thereto."

The Tax Court did not determine the second issue in the case in relation to whether or not the taxpayer bank had erred in computing its reserves under Mim. 6209.

Prior to hearing in this court, the Commissioner issued still another bulletin pertaining to this topic (Rev.Rul. 63–267, 1963–51, Int.Rev.Bull. 10). The crucial two sentences are quoted below:

"In connection with the implementation of section 166(c) of the Code with respect to banks, there is set forth in Mimeograph 6209, C.B. 1947–2, 26, and Revenue Rulings supplementary thereto, guidelines for computing a reasonable addition to a reserve for bad debts. The Service will continue to allow additions to bank bad debt reserves when the additions are determined by the Commissioner to be properly computed in accordance with the formula set forth in the foregoing publications."

In view of this action, counsel for respondent Commissioner changed his position in a Supplemental Brief and at oral argument; and, abandoning reliance on his first argument, urged affirmance solely on the second ground of his contention before the Tax Court, namely, that the taxpayer bank had not properly applied the provisions of Mim. 6209.

Since, obviously, this latter issue was not considered by the Tax Court, we remand for its reconsideration and decision in the light of the altered posture of this case set out heretofore.

The decision of the Tax Court is vacated and the case is remanded.